## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

```
***********************************
                                   *
TargetPath, LLC,                   *
                                   *
         Plaintiff,                *    Case No. 24-1305 T
                                   *
v.                                 *
                                   *
THE UNITED STATES,                 *
                                   *
         Defendant.                *
                                   *
***********************************
```

## COMPLAINT

Plaintiff TargetPath, LLC ("Plaintiff"), by counsel, for its complaint against the United States, states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this Action to recover refunds of overpaid federal employment taxes for the employment tax quarters ending September 30, 2020, December 31, 2020, March 31, 2021, June 30, 2021, and September 30, 2021 ("periods at issue"), plus interest thereon as provided by law.

2. Plaintiff is entitled these refunds under Section 2301 of Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136, 134 Stat. 281), as modified and amended by the Taxpayer Certainty and Disaster Relief Act of 2020, enacted as Division EE of the Consolidated Appropriations Act, 2021 (Pub. L. 116-260, 134 Stat. 1182, December 27, 2020), and the American Rescue Plan Act of 2021 (Pub. L. 117-2, 135 Stat. 177, March 11, 2021).

3. The CARES Act was signed into law on March 27, 2020, to provide direct economic assistance for American workers, families, small businesses, and industries, in the face

of the COVID-19 pandemic in the form of a refundable payroll tax credit called the "Employee Retention Credit" or "ERC."

## PARTIES

4. Plaintiff is a limited liability company formed under the laws of the State of Oregon. Its employer identification number is XX-XXX8287. Plaintiff's business address is 9375 SW Commerce Circle Suite 7, Wilsonville, Oregon 97070.

5. Defendant is the United States of America.

## JURISDICTION AND VENUE

6. This Action arises under 26 § U.S.C. 7422(a), which permits actions by Plaintiff to recover any Internal Revenue tax alleged to have been erroneously or illegally assessed or collected.

7. This Action is proper under 26 § U.S.C. 6532(a)(1), which allows a plaintiff to bring a tax refund action in this Court once six months have passed from the filing of the claim for refund with the IRS, and before two years from the date shown on the IRS's notice disallowing the claim for refund.

8. Jurisdiction is proper under 28 U.S.C. §§ 1340, 1346(a)(1), and 1491(a)(1), which provide that the Court of Federal Claims shall have original jurisdiction over any civil action arising under any act of Congress providing for Internal Revenue and for the recovery of any Internal Revenue tax alleged to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the Internal Revenue laws.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1402(a)(2).

**STATEMENT OF FACTS**

10. Plaintiff is in the trade or business of providing consulting services to growth-focused technology companies. Plaintiff provides business and sales startup, growth, and expansion strategies to its clients.

11. In calendar year 2019, Plaintiff had fewer than 100 full-time employees. Plaintiff's equity owners are individuals. For calendar years 2019, 2020, and 2021, Plaintiff was not affiliated with any other trades or businesses by common ownership or control.

12. During the COVID-19 pandemic, Plaintiff experienced a significant reduction in demand for its services, as businesses negatively impacted by the COVID-19 sought to cut costs, reducing spending on consulting services, and forestall growth and expansion strategies. Due to this reduction in demand arising from the COVID-19 pandemic, Plaintiff's revenue declined significantly.

13. During the relevant periods, Plaintiff's gross receipts were as follows:

   a. Plaintiff had $2,381,357.52 of gross receipts for the calendar quarter ending March 31, 2019.

   b. Plaintiff had $1,774,202.52 of gross receipts for the calendar quarter ending June 30, 2019.

   c. Plaintiff had $1,787,741.45 of gross receipts for the calendar quarter ending September 30, 2019.

   d. Plaintiff had $1,172,138.77 of gross receipts for the calendar quarter ending December 31, 2019.

   e. Plaintiff had $813,664.45 of gross receipts for the calendar quarter ending September 30, 2020.

   f. Plaintiff had $852,634.11 of gross receipts for the calendar quarter ending December 31, 2020.

   g. Plaintiff had $1,432,338.34 of gross receipts for the calendar quarter ending March 31, 2021.

   h. Plaintiff had $995,781.32 of gross receipts for the calendar quarter ending June 30, 2021.

   i. Plaintiff had $1,514,869.65 of gross receipts for the calendar quarter ending September 30, 2021.

  14. For each of the periods at issue, Plaintiff experienced declines in gross receipts compared to calendar quarters in 2019.

   a. Comparing the gross receipts from the calendar quarter ending September 30, 2020, to the calendar quarter ending September 30, 2019, Plaintiff had a decline in gross receipts of approximately 54 percent (i.e., 1 - (813,664.45 / 1,787,741.45)). Plaintiff's gross receipts for the calendar quarter ending September 30, 2020, were less than 50 percent of Plaintiff's gross receipts for the calendar quarter ending September 30, 2019.

   b. Comparing the gross receipts from the calendar quarter ending December 31, 2020, to the calendar quarter ending December 31, 2019, Plaintiff had a decline in gross receipts of approximately 27 percent (i.e., 1 - (852,634 / 1,172,138.77)).

   c. Comparing the gross receipts from the calendar quarter ending March 31, 2021, to the calendar quarter ending March 31, 2019, Plaintiff had a decline in gross receipts of approximately 40 percent (i.e., 1 - (1,432,338.34 / 2,381,357.52)). Plaintiff's gross receipts for the calendar quarter ending March 31, 2021, were less than 80 percent of Plaintiff's gross receipts for the calendar quarter ending March 31, 2019.

d. Comparing the gross receipts from the calendar quarter ending June 30, 2021, to the calendar quarter ending June 30, 2019, Plaintiff had a decline in gross receipts of approximately 44 percent (i.e., 1 - (995,781.32/ 1,774,202.54)). Plaintiff's gross receipts for the calendar quarter ending June 30, 2021, were less than 80 percent of Plaintiff's gross receipts for the calendar quarter ending June 30, 2019.

e. Comparing the gross receipts from the calendar quarter ending September 30, 2021, to the calendar quarter ending September 30, 2019, Plaintiff had a decline in gross receipts of approximately 15 percent (i.e., 1 - (1,514,869.65 / 1,787,741.45)).

15. For each of the periods at issue, Plaintiff (1) paid to its employees remuneration treated as wages under 26 U.S.C. § 3121(a) ("qualified wages"), and (2) incurred health plan expenses on behalf of its employees which were not includable in its employees' income by reason of 26 U.S.C. § 106(a) ("qualified health plan expenses").

16. Plaintiff received Paycheck Protection Program ("PPP") loans with covered periods from May 6, 2020, to October 20, 2020, and from January 26, 2021, to July 12, 2021.

17. Plaintiff, via its payroll provider and reporting agent, timely filed Form 941, *Employer's Quarterly Federal Tax Returns*, and timely paid all amounts due, for each of the employment tax quarters ending September 30, 2020; December 31, 2020; March 31, 2021; June 30, 2021; and September 30, 2021.

18. Plaintiff initially overreported applicable employment taxes on its Form 941 for each of the employment tax quarters ending September 30, 2020; December 31, 2020; March 31, 2021; June 30, 2021; and September 30, 2021, because Plaintiff did not claim the ERC for those employment tax quarters on its original Form 941 filings. Copies of Plaintiff's original Form 941 filings are attached as Exhibit 1.

19.     On April 14, 2023, Plaintiff, via its payroll provider and reporting agent, timely filed with the Department of the Treasury, Internal Revenue Service, Kansas City, Missouri, Form 941-X, *Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund*, for each of the employment tax quarters ending September 30, 2020; December 31, 2020; March 31, 2021; June 30, 2021; and September 30, 2021. Copies of Plaintiff's 941-X filings are attached as Exhibit 2.

20.     Plaintiff reported on its Forms 941-X (a) qualified wages for the ERC of $39,421.17 and qualified health plan expenses for the ERC of $172.44 for the employment tax quarter ending September 30, 2020; (b) qualified wages for the ERC of $294,100.41 and qualified health plan expenses for the ERC of $3,006.66 for the employment tax quarter ending December 31, 2020; (c) qualified wages for the ERC of $311,619.61 and qualified health plan expenses for the ERC of $4,535.69 for the employment tax quarter ending March 31, 2021; (d) qualified wages for the ERC of $346,066.13 and qualified health plan expenses for the ERC of $1,454.06 for the employment tax quarter ending June 30, 2021; and (e) qualified wages for the ERC of $363,293.31 and qualified health plan expenses for the ERC of $1,899.96 for the employment tax quarter ending September 30, 2021.

21.     Plaintiff claimed on its Forms 941-X (a) a refund of $19,796.80 for the employment tax quarter ending September 30, 2020; (b) a refund of $148,553.54 for the employment tax quarter ending December 31, 2020; (c) a refund of $221,308.71 for the employment tax quarter ending March 31, 2021; (d) a refund of $243,264.13 for the employment tax quarter ending June 30, 2021; and (e) a refund of $255,635.29 for the employment tax quarter ending September 30, 2021.

22. Plaintiff correctly calculated its qualified wages and the amount of its ERC for each of the periods at issue based on the wages it paid to its employees and the health plan expenses incurred on behalf its employees.

23. On September 14, 2023, the Internal Revenue Service ("IRS") publicly announced a moratorium on processing ERC claims submitted after September 14, 2023.

24. The IRS's public announcement stated that "payouts" for ERC refund claims filed prior to the public announcement of the moratorium "will continue during the moratorium period." *See* IRS News Release IR-2023-169 (Sept. 14, 2023). Contrary to its public statement, the IRS stopped processing nearly all pending ERC refund claims, including claims filed prior to the public announcement of the moratorium. Initially, the IRS announced that the moratorium would continue through December 31, 2023. The moratorium is still in place, with no current end date.

25. The IRS has not acted on Plaintiff's claims for refund. These claims have been pending before the IRS for well over a year.

## **CLAIM FOR RELIEF**

### **(Refund of Taxes)**

26. Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 25 above.

27. Plaintiff is entitled to refunds of taxes for the amount Plaintiff claimed as the ERC for the periods at issue. An "eligible employer" is allowed an ERC against applicable employment taxes for each calendar quarter an amount equal to (a) 50 percent of the "qualified wages" paid with respect to each such employee for each calendar quarter for 2020, and (b) 70 percent of the "qualified wages" with respect to each employee of such employer for such calendar quarters in

2021. *See* Section 2301(a) of the CARES Act, as amended by Section 207(b) of the Taxpayer Certainty and Disaster Relief Act of 2020; 26 U.S.C. § 3134(a).

28. An employer is an "eligible employer" for the ERC for any calendar quarter in 2020 or 2021 if (a) the employer was carrying on a trade or business, and (b) with respect to such calendar quarter, (i) the operation of the employer's trade or business was "fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID–19)" or (ii) the employer experienced a "significant decline in gross receipts." *See* Section 2301(c)(2) of the CARES Act, as amended by Section 207 of the Taxpayer Certainty and Disaster Relief Act of 2020; 26 U.S.C. § 3134(c)(2).

29. Plaintiff is an eligible employer for the ERC for the periods at issue because during such periods (a) Plaintiff was in the trade or business of providing consulting services to businesses, and (b) Plaintiff experienced a significant decline in gross receipts.

30. For 2020, an employer experiences a significant decline in gross receipts beginning with the first calendar quarter during 2020 for which the employer's gross receipts (within the meaning of 26 U.S.C. § 448(c)) are less than 50 percent of the employer's gross receipts for the same calendar quarter in 2019. The employer continues to be treated as having a significant decline in gross receipts for each calendar quarter thereafter until the calendar quarter following the first calendar quarter the employer's gross receipts are greater than 80 percent of gross receipts for the same calendar quarter in 2019. *See* Section 2301(c)(2)(B) of the CARES Act.

31. For 2021, an employer experiences a significant decline in gross receipts for the first, second, or third calendar quarter of 2021 if the employer's gross receipts (within the meaning of 26 U.S.C. § 448(c)) for such calendar quarter are less than 80 percent of the employer's gross

receipts for the same calendar quarter in 2019. *See* Section 2301(c)(2) of the CARES Act, as amended by Section 207(d) of the Taxpayer Certainty and Disaster Relief Act; 26 U.S.C. § 3134(c)(2). An employer may elect to determine if the significant decline in gross receipts test is met for a calendar quarter in 2021 by comparing the employer's gross receipts for the immediately preceding calendar quarter with the employer's gross receipts for the corresponding calendar quarter in 2019. *See* Section 207(d)(2) of the Taxpayer Certainty and Disaster Relief Act; 26 U.S.C. § 3134(c)(2)(B); *see also* IRS Notice 2021-23, 2021-16 I.R.B. 1113.

32.     Plaintiff first experienced a significant decline in gross receipts for the calendar quarter ending September 30, 2020, because Plaintiff's gross receipts for such calendar quarter were less than 50 percent of Plaintiff's gross receipts for the calendar quarter ending September 30, 2019. Plaintiff continued to be treated as having a significant decline in gross receipts for the calendar quarter ending December 31, 2020.

33.     Plaintiff had a significant decline in gross receipts for the calendar quarter ending March 31, 2021, because Plaintiff's gross receipts for the calendar quarter ending March 31, 2021, were less than 80 percent of Plaintiff's gross receipts for the calendar quarter ending March 31, 2019. Plaintiff had a significant decline in gross receipts for the calendar quarter ending June 30, 2021, because Plaintiff's gross receipts for the calendar quarter ending June 30, 2021, were less than 80 percent of Plaintiff's gross receipts for the calendar quarter ending June 30, 2019. Plaintiff had a significant decline in gross receipts for the calendar quarter ending September 30, 2021, because Plaintiff elected under 26 U.S.C. § 3134(c)(2)(B) to determine that Plaintiff met the significant decline in gross receipts test by comparing its gross receipts for the calendar quarter ending June 30, 2021, with its gross receipts for the calendar quarter ending June 30, 2019.

34. Plaintiff paid qualified wages for the periods at issue. Qualified wages include "wages" within the meaning of 26 U.S.C. § 3121(a) plus certain "health plan expenses." *See* Sections 2301(c)(3) and 2301(c)(5) of the CARES Act, as amended by Sections 206(b) and 207 of the Taxpayer Certainty and Disaster Relief Act; 26 U.S.C. § 3134(c)(4). During 2019, Plaintiff employed fewer than 100 full-time employees. Thus, the qualified wages paid by Plaintiff for both 2020 and 2021 consist of all wages paid and health plan expenses incurred with respect to the calendar quarters in which Plaintiff is an eligible employer. *See* Section 2301(c)(3) of the CARES Act, as amended by Section 207(e) of the Taxpayer Certainty and Disaster Relief Act; 26 U.S.C. § 3134(c)(4).

35. Plaintiff paid qualified wages of $39,593.61 (including $172.44 of qualified health plan expenses) for the employment tax quarter ending September 30, 2020; qualified wages of $297,107.07 (including $3,006.66 of qualified health plan expenses) for the employment tax quarter ending December 31, 2020; qualified wages of $316,155.30 (including $4,535.69 of qualified health plan expenses) for the employment tax quarter ending March 31, 2021; qualified wages of $347,520.19 (including $1,454.06 of qualified health plan expenses) for the employment tax quarter ending June 30, 2021; and qualified wages of $365,193.27 (including qualified health plan expenses of $1,899.96) for the employment tax quarter ending September 30, 2021.

36. None of the qualified wages paid by Plaintiff were taken into account as payroll costs in connection with forgiveness of the PPP loans Plaintiff received.

37. Because Plaintiff was an eligible employer that paid qualified wages for the periods at issue, Plaintiff is entitled to claim the ERC for such periods.

38. The 2020 version of the ERC allows an eligible employer to claim a credit against applicable employment taxes for each calendar quarter in 2020 equal to 50 percent of the qualified

wages paid with respect to each employee of the employer for such calendar quarter. *See* Section 2301(a) of the CARES Act. The maximum qualified wages an eligible employer may take into account with respect to any employee for calendar year 2020 shall not exceed $10,000. *See* Section 2301(b) of the CARES Act. This means that an eligible employer may claim a credit of up to $5,000 for each employee for 2020.

39. The 2021 version of the ERC allows an eligible employer to claim a credit against applicable employment taxes for each calendar quarter in 2021 equal to 70 percent of the qualified wages paid with respect to each employee of the employer for such calendar quarter. *See* Section 2301(a) of the CARES Act, as amended by Section 207 of the Taxpayer Certainty and Disaster Relief Act; 26 U.S.C. § 3134(a). The amount of qualified wages an eligible employer may take into account with respect to any employee for any calendar quarter in 2021 shall not exceed $10,000. *See* Section 2301(b) of the CARES Act, as amended by Section 207 of the Taxpayer Certainty and Disaster Relief Act; 26 U.S.C. § 3134(b). This means that for each quarter in 2021, an eligible employer may claim a credit of up to $7,000 for each employee.

40. If amount of the credit exceeds the employer's applicable employment taxes for the calendar quarter, the excess is treated as an overpayment that shall be refunded under 26 U.S.C. §§ 6402(a) and 6413(b). *See* Section 2301(b)(3) of the CARES Act, as amended by Section 207 of the Taxpayer Certainty and Disaster Relief Act; 26 U.S.C. § 3134(b)(3).

41. On Plaintiff's Forms 941-X, Plaintiff claimed the ERC in the amount of (a) $19,796.80 for the employment tax quarter ending September 30, 2020, based on qualified wages paid of $39,593.61 (including $172.44 of qualified health plan expenses) and a credit rate of 50 percent; (b) $148,553.54 for the employment tax quarter ending December 31, 2020, based on qualified wages paid of $297,107.07 (including $3,006.66 of qualified health plan expenses)

and a credit rate of 50 percent; (c) $221,308.71 based on qualified wages paid of $316,155.30 (including $4,535.69 of qualified health plan expenses) and a credit rate of 70 percent for the employment tax quarter ending March 31, 2021; (d) $243,264.13 based on qualified wages paid of $347,520.19 (including $1,454.06 of qualified health plan expenses) and a credit rate of 70 percent for the employment tax quarter ending June 30, 2021; and (e) $255,635.29 based on qualified wages paid of $365,193.27 (including qualified health plan expenses of $1,899.96) and a credit rate of 70 percent for the employment tax quarter ending September 30, 2021.

42. Because Plaintiff had previously paid all applicable employment taxes for the periods at issue, Plaintiff is entitled to (a) a refund of at least $19,796.80, plus interest thereon, for the employment tax quarter ending September 30, 2020; (b) a refund of at least $148,553.54, plus interest thereon, for the employment tax quarter ending December 31, 2020; (c) a refund of at least $221,308.71, plus interest thereon, for the employment tax quarter ending March 31, 2021; (d) a refund of at least $243,264.13, plus interest thereon, for the employment tax quarter ending June 30, 2021; and (e) a refund of at least $255,635.29, plus interest thereon, for the employment tax quarter ending September 30, 2021.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendant, the United States of America, for:

i) A refund of at least $19,796.80, or such greater amount as permitted by law, plus interest thereon, for Plaintiff's ERC claim for refund for the employment tax quarter ending September 30, 2020.

ii) A refund of at least $148,553.54, or such greater amount as permitted by law, plus interest thereon, for Plaintiff's ERC claim for refund for the employment tax quarter ending December 31, 2020.

iii) A refund of at least $221,308.71, or such greater amount as permitted by law, plus interest thereon, for Plaintiff's ERC claim for refund for the employment tax quarter ending March 31, 2021.

iv) A refund of at least $243,264.13, or such greater amount as permitted by law, plus interest thereon, for Plaintiff's ERC claim for refund for the employment tax quarter ending June 30, 2021.

v) A refund of at least $255,635.29, or such greater amount as permitted by law, plus interest thereon, for Plaintiff's ERC claim for refund for the employment tax quarter ending September 30, 2021.

vi) Reasonable litigation costs, pursuant to 26 U.S.C. § 7430.

vii) Such other and further relief as the Court deems just and proper.

Dated: August 23, 2024

Respectfully submitted,

VENABLE LLP

/s/ Christopher N. Moran
Christopher N. Moran, Esq.
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7604 (telephone)
(410) 244-7742 (facsimile)
cnmoran@venable.com

*Counsel for Plaintiff TargetPath, LLC*

-14-

Of counsel:

Theresa Clardy LaFazia
VENABLE LLP
2049 Century Park East
Los Angeles, CA
(310) 229-9609 (telephone)
(310) 821-8949 (facsimile)
tclardy@venable.com

Kevin W. Weigand
VENABLE LLP
1850 Towers Crescent Plaza, Suite 400
Tysons, VA 22182
(703) 905-1404 (telephone)
(703) 821-8949 (facsimile)
kwweigand@Venable.com